UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW BEDZ,

     Plaintiff,                   Case No. 2:20-cv-12731

                                      District Judge David M. Lawson

v.                              Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

I.     Introduction

     This is a Social Security case.  Plaintiff Andrew Bedz ("Bedz") brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Both parties have filed summary judgment motions (ECF Nos. 17, 22), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

1

For the reasons set forth below, it is RECOMMENDED that the

Commissioner's motion (ECF No. 22) be GRANTED, that Bedz's motion (ECF

No. 17) be DENIED, and that the Commissioner's decision be AFFIRMED.

## II.     Background
### A.     Procedural History

Bedz was 34 years old at the time of the July 1, 2017 alleged onset date.

(ECF No. 11-7, PageID.360).  He completed high school and worked previously as

an inventory specialist, sales associate, and merchandiser.  (ECF No. 11-8,

PageID.386).  He alleges disability due to a neck injury, left-sided body numbness,

depression, anxiety, and migraine headaches.  (*Id*., PageID.385).

After Bedz's October 4, 2017 DIB application was denied at the initial level

on April 11, 2018, he timely requested an administrative hearing, held on July 15,

2019, before Administrative Law Judge ("ALJ") Patricia S. McKay.  (ECF No. 11-

6, PageID.312;ECF No. 11-4, PageID.212).  Bedz, unrepresented, testified, as did

a Vocational Expert ("VE").  (*Id.*, PageID.24, 239).

Bedz offered the following testimony at the hearing:

He was right-handed, stood 6' 2", and weighed 220 pounds.  (*Id*.,

PageID.224).  He lived with his wife and three children, aged 11, 6, and 4.  (*Id*.).

His wife was disabled due to a back condition.  (*Id*.).  They lived in a first-floor

apartment.  (*Id*., PageID.225).  He became disabled in July 2017 due to bilateral

shoulder dysplasia.  (*Id.*, PageID.229).  He underwent surgery to both shoulders after the diagnosis.  (*Id.*).  The right shoulder was repaired in July 2018 and the left in November 2018.  (*Id.*, PageID.230).  He ceased post-surgery physical therapy due to his gallbladder removal.  (*Id.*).  As a result of insurance limitations, he had not received treatment for anxiety or depression.  (*Id.*).  His migraines ceased after the gallbladder surgery.  (*Id.*).  He underwent cervical fusion in 2014 and had only recently begun to have renewed neck problems.  (*Id.*, PageID.230-231).  He was unable to lift his left arm overhead and experienced right-sided numbness.  (*Id.*, PageID.231).  He was unable to lift more than 10 pounds.  (*Id.*).

On a typical day, Bedz arose at 9:00 a.m., performed some household chores, interacted with his children, played video games, and watched television. (*Id.*, PageID.232-233, 235).  He was no longer able to throw a ball or walk for long distances but was able to make short shopping trips.  (*Id.*, PageID.233).  He was able to take care of his personal needs, fold clothes, and vacuum.  (*Id.*, PageID.234).  The majority of his days were "bad" days, characterized by shooting upper extremity pain and hand numbness.  (*Id.*, PageID.235).  He did not hold a driver's license and relied on his wife for transportation.  (*Id.*, PageID.236).  Long distance walking caused shoulder and neck pain.  (*Id.*).  He was unable to sit for more than 30 minutes but did not experience problems standing as long as he shifted positions "to keep [his] joints moving."  (*Id.*, PageID.237).  He did not

require the use of a cane or walker. (*Id*.). Medication prescribed for anxiety caused stomach aches. (*Id*., PageID.237). He experienced chest pains due to anxiety. (*Id*., PageID.238).

On November 20, 2019, ALJ McKay found Bedz not disabled. (ECF No. 11-2, PageID.53-61). On August 12, 2020, the Appeals Council denied review of the ALJ's determination, finding that evidence submitted subsequent to the ALJ's determination did not show "a reasonable probability" of changing the determination. (*Id*., PageID.43-44). Bedz timely filed a claim for judicial review of the final decision on October 7, 2020.

### B.    Medical Evidence

February 2001 academic records state note a full-scale IQ of 70 as of 1998.[1] (ECF No. 11-9, PageID.469). Bedz, then age 18, was found to be eligible for speech-language services. (*Id*., PageID.475). The evaluation records note that his language deficits did "not appear to affect [his] academic classes." (*Id*., PageID.473).

In May 2017, Bedz sought emergency treatment for low back pain. (ECF No. 12-3, PageID.1157). An x-ray of the lumbar spine showed only mild

---

[1] A Full Scale standard score of 70-79 is indicative of "borderline" intellectual abilities. https://www.ldaminnesota.org/community-programs/fact-sheets/learning-disability-low-ability. (Last visited February 15, 2022).

degenerative changes.  (*Id.*, PageID.1160).  He exhibited a normal range of motion.  (*Id.*, PageID.1159).

In September 2017, Daniel L. Menkes, M.D. noted that Bedz appeared fully oriented with fluent speech and an adequate fund of knowledge.  (ECF No. 11-9, PageID.553).  Dr. Menkes observed that "tandem gait testing augmented the antalgia."  (*Id.*, PageID.553).  Bedz reported that his attempts to procure psychological care were stymied by insurance restrictions.  (*Id.*).  Dr. Menkes prescribed Cymbalta for the reported symptoms of anxiety.  (*Id.*, PageID.554).  Dr. Menkes opined that the reported headaches were attributable to caffeine withdrawal.  (*Id.*).  In regard to motor testing, he noted that Bedz exerted "variable effort in all major motor groups."  (*Id.*, PageID.553).  An examination of the upper extremities was negative for neurological deficits.  (*Id.*, PageID.557).  Dr. Menkes noted that due to prior cervical spine surgery, Bedz was at "increased risk for degenerative cervical spine disease and a recurrent myelopathy."  (*Id.*).

Later the same month, Bedz sought emergency treatment for abdominal pain and anxiety.  (ECF No. 12-4, PageID.1317).  Treating staff noted a normal affect with good judgement, normal behavior, and full orientation.  (*Id.*, PageID.1321).  Clinical testing and imaging studies were unremarkable.  (*Id.*, PageID.1322).

An October 2017 MRI of the cervical spine showed postoperative changes at C6-C7 and degenerative changes "similar to [a] prior study."  (ECF No. 12-3,

PageID.1177).  The same month, Bedz report that Cymbalta made him "tired." (ECF No. 11-8, PageID.407).

In November 2017, Bedz sought emergency treatment for difficulty walking due to chronic lumbar back pain.  (ECF No. 12-3, PageID.1179).  He exhibited a normal range of lower extremity motion and full strength.  (*Id*., PageID.1871).

In January 2018, psychiatrist M. Dibai, M.D. examined Bedz on behalf of the Social Security Administration (SSA), noting Bedz's report of severe depression and anxiety and left-sided body numbness.  (ECF No. 11-10 PageID.697).  Bedz denied speech therapy after graduating from high school. (*Id*.).  He reported that during his years of employment, he was able to conform to the expectations of supervisors and get along well with coworkers.  (*Id*., PageID.698).  Dr. Dibai noted that Bedz was "cooperative, self-absorbed, and preoccupied with somatic symptoms such as numbness of the left side of body" but was "calm, polite, and respectful."  (*Id*.).  He reported that he had a driver's license but relied on his wife to drive due to left hand numbness.  (*Id*.).

Dr. Dibai noted that Bedz appeared "somewhat worried" but not overtly anxious.  (*Id*.).  Dr. Dibai noted misarticulated but logical, audible, and goal directed speech.  (*Id*., PageID.699).  Bedz denied mood swings.  (*Id*.).  He appeared "introverted, apathetic, self-absorbed, and preoccupied."  (*Id*.).  He was able to perform serial "7s from 100" without problems.  (*Id*.).  Dr. Dibai found an

anxiety disorder "due to medical condition" and a speech articulation disorder but "no sign of persistent depressed mood or overt anxiety" with "perfect" cognitive ability "as reflected in his performance of serial 7s." (*Id*., PageID.700). Dr. Dibai noted that Bedz presented as intellectually "above average" but "did not seem to be motivated to seek employment . . ." (*Id*.).

Also in January of 2018, Dyan Hampton-Aytch, Ph.D. performed a non-examining review of Bedz's alleged psychological limitations resulting from anxiety, finding no limitation in understanding remembering, or applying information or interacting with others. (ECF No. 11-5, PageID.289). She found mild limitation in concentration, persistent, or pace and adapting or managing himself. (*Id*.). Dr. Hampton-Aytch found the psychological impairments non-severe. (*Id*., PageID.290).

The following month, February 2018, Bedz sought emergency treatment for left-sided numbness. (ECF No. 12-3, PageID.1193-1197). He was able to walk independently, and a neurological examination was unremarkable. (*Id*.). A February 2018 MRI of the brain was essentially unremarkable. (ECF No. 11-10, PageID.709). An MRI of the cervical spine showed moderate foraminal narrowing at C3-C4, mild foraminal narrowing at C4-C5, facet joint spondylosis at C5-C6, and postoperative changes at C6-C7. (*Id*., PageID.710). An MRI of the brain from

the next month showed stable findings with "no evidence of pathological enhancement in the brain."  (ECF No. 12-4, PageID.1226).

In March 2018, Ramya Manney, M.D. performed a physical consultative examination on behalf of the SSA, noting Bedz's report of left upper and lower extremity weakness and bilateral shoulder pain.  (ECF No. 11-10, PageID.740). Dr. Manney observed that Bedz walked without a cane and was able to sit, stand, and walk without difficulty.  (*Id.*, PageID.741-742).  Bedz exhibited a limited range of cervical spine, a slight restricted range of lumbar spine motion, bilateral shoulder tenderness, a restricted range of bilateral ankle motion, and a mild restriction of right hip motion.  (*Id.*).  Dr. Manney noted left upper and lower extremity weakness and numbness of "unknown" cause and bilateral shoulder pain. (*Id.*, PageID.742).  She noted intact fine and gross dexterity with 5/5 strength in the left upper and lower extremities.  (*Id.*, PageID.743).  Dr. Manney limited Bedz to lifting 10 pounds but noted that "there is a question of him putting his full effort at this time."[2]  (*Id.*, PageID.743).

---

[2] Dr. Manney's finding describes the lifting requirements for sedentary work which involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R.  § 404.1567(a).  However, the 10-pound lifting restriction by itself does not imply a restriction to exertionally sedentary work.  "Even though the weight lifted in a particular [exertionally] light job may be very little, a job is in this category when it requires a good deal of walking or standing - the primary difference between

The same month, Bedz sought emergency treatment for right shoulder pain.
(*Id*., PageID.734). Bedz reported shoulder pain on range of motion testing. (*Id*.).
An examination showed no weakness or dislocation. (*Id*.). Emergency room
records note that Bedz underwent cervical fusion surgery in February 2015. (*Id*.,
PageID.736). Imaging studies of the shoulder showed no fracture or dislocation
but were positive for glenoid dysplasia.[3] (*Id*., PageID.739). He was referred to an
orthopedic specialist. (*Id*., PageID.738).

In April 2018, A. Marnaril, M.D. performed a non-examining review of the
consultative and treating evidence, finding that Bedz could lift 20 pounds
occasionally and 10 frequently; sit, stand, or walk around six hours in an eight-
hour workday; and push and pull without limitation. (*Id*., PageID.292). Dr.
Marnaril found that Bedz could balance and climb ramps/stairs frequently; stoop,
kneel, crouch, or crawl occasionally; and was precluded from the use of ladders,
ropes, or scaffolds. (*Id*.). He limited Bedz to only occasional overhead reaching.

---

sedentary and most light jobs." SSR 83-10, 1983 WL 31251, at *6 (January 1,
1983).

   [3] Glenoid dysplasia, "a developmental anomaly of the scapula," can be
treated with non-surgical means or shoulder arthroplasty. https://pubmed.ncbi.nlm.
nih.gov https://pubmed. ncbi.nlm.nih.gov/11940612/. (Last visited February 13,
2022).

(*Id*., PageID.293).  He found that Bedz should avoid all exposure to vibration and hazards.  (*Id*.).

A May 2018 CT of the right shoulder confirmed the condition of glenoid dysplasia.  (ECF No. 11-11, PageID.823).  In July 2018, Bedz underwent a right shoulder arthroscopy without complications.  (*Id*., PageID.810).

In October 2018, Bedz again sought emergency treatment for back pain and numbness resulting from a laparoscopic cholecystectomy earlier the same month.[4] (ECF No. 12-5, PageID.1406).  He exhibited normal strength and a normal gait. (*Id*., PageID.1409).  Emergency records from later the same month note his report of numbness.  (*Id*., PageID.1420).  He exhibited a normal range of motion and normal muscle strength.  (*Id*., PageID.1422-23).

In November 2018, a CT of the left shoulder showed glenoid dysplasia. (ECF No. 11-11, PageID.818).  The same month, Bedz underwent left shoulder arthroscopy without complications for the condition.  (*Id*., PageID.804-805). December 2019 emergency treatment records for back pain note that Bedz was "nervous/anxious."  (ECF No. 12-5, PageID.1488).  Emergency records from later

---

[4] "A cholecystectomy [] is a surgical procedure to remove [the] gallbladder."  https://www.mayoclinic.org/tests-procedures/ cholecystectomy/about/pac-20384818.  (Last visited February 15, 2022).

the same month for back pain and urinary urgency state that his symptoms "[did]

not suggest an emergent process."  (*Id*., PageID.1507).

In March 2019, Bedz sought emergency treatment for left flank pain.  (ECF

No. 12-6, PageID.1551).  A CT showed an obstructing left ureteral calculus

(kidney stone).  (*Id*., PageID.1556).  Treating records from the same month note

Bedz's report of right knee "cracks" while bending but no acute distress.  (*Id*.,

PageID.1654).  Bedz also reported a chronically sore left shoulder with a mild

decrease in range of motion.  (*Id*.).  He did not appear to be in acute distress.  (*Id*.).

### III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB is available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or

mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520.  "The burden of proof is on the claimant throughout the first four steps. . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the sequential analysis set forth above, the ALJ found that Bedz was not disabled under the Act.  At Step One, the ALJ found that Bedz had not engaged in substantial gainful activity since the amended alleged onset date of July 1, 2017 thorough the date of the decision.  (ECF No. 14-2 PageID.55).  At Step

Two, the ALJ found that Bedz had the severe impairments of "history of cervical fusion with degenerative disc disease of the cervical spine; hypertension and bilateral glenoid dysplasia status/post repair and left hip bursitis." (*Id.*, PageID.56). At Step Three, the ALJ found that Betz's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Bedz's RFC, concluding that he was capable of performing exertionally light work with the following additional limitations:

> [H]e is limited to occasional climbing of stairs, crouching, crawling, kneeling, stooping/bending; avoid workplace hazards such as dangerous, moving machinery and unprotected heights so claimant is not able to climb ladders, ropes or scaffolding; no overhead reaching with bilateral upper extremities; and, due to pain, he is limited to self-paced work, not work in a [production-based] environment.

(*Id.*).

At Step Four, the ALJ found that Bedz was unable to perform his past relevant work. (*Id.*, PageID.59). At Step Five, the ALJ cited the VE's hearing testimony in support of his Step Five finding that Bedz could perform the unskilled, light work of a packer (63,000 positions in the national economy); sorter (83,000); and assembler (97,000). (*Id.*, PageID.60, 242).

## IV.    Standard of Review

13

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017)(same).

An ALJ's factual findings must be supported by "substantial evidence."  42 U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

## V.      Analysis

Bedz requests a remand to the administrative level for either an award of benefits or further proceedings, arguing first that the ALJ erred by declining to find that the conditions of learning disability with speech impairment, migraine headaches, depression, anxiety, and the lumbar spine condition were "severe" impairments at Step Two of the sequential analysis.  (ECF No. 17, PageID.1756). The Commissioner argues that the ALJ's finding that the above conditions were not severe impairments is well supported and adequately explained.  (ECF No. 22, PageID.1790, 1794, 1797-98).

Second, Bedz argues that the hypothetical question to the VE forming the basis of the RFC found in the administrative opinion does not account for his full degree of exertional, postural, manipulative, and psychological limitation.  (ECF No. 17, PageID.1762).  In turn, the Commissioner argues that substantial evidence supports the RFC for a limited range of light work, citing portions of the record supporting the ALJ's inclusion of some of the professed limitations in the RFC and the exclusion of others.  (ECF No. 22, PageID.1801).  Each argument will be considered in turn below.

### A.      The Step Two Findings

As noted above, at Step Two, the ALJ found that "history of cervical fusion with degenerative disc disease of the cervical spine, hypertension, bilateral glenoid dysplasia status/post repair and left hip bursitis" were severe impairments. (ECF No. 11-2, PageID.56). The ALJ found that the non-severe impairments included "but [were] not limited to recurrent partial bowel obstruction status/post cholecystectomy; history of speech impediment." (*Id.*). In the same paragraph, she further noted the conditions of "alleged back pain; migraines; [and] depression and anxiety." (*Id.*).

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Sec'y of Health and Human Serv.*, 773 F.2d 85, 89 (6th Cir. 1985). At Step Two, a condition can be deemed "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " *Id.* at 90 (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). 20 C.F.R. § 404.1522(a) defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." *See also* SSR 85-28 1985 WL 56856, at *3 (1985)(same). "Basic work activities" include the physical functions "such as walking, standing, sitting" as well as the capacity for

"seeing, hearing, and speaking."  § 404.1522(b)(1-2).  By itself, the failure to include a condition causing work-related impairment among the "severe impairments" at Step Two does not constitute reversible error.  The failure to acknowledge an impairment at Step Two is harmless error provided that limitations stemming from the condition are addressed at the remaining steps of the sequential analysis.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Fisk v. Astrue*, 253 F. App'x 580, 583-584, 2007 WL 3325869, at *4 (6th Cir. 2007).

> 1.    Learning Disability with Speech Impairment

In regard to Bedz's learning disability with speech impairment, the ALJ explicitly found that the condition was non-severe because the impediment did not prevent Bedz from holding jobs "including jobs interacting with the public."  (ECF No. 11-2, PageID.56).  While Bedz's academic records note a history of speech impairment (ECF No. 11-9, PageID.469), substantial evidence supports the ALJ's finding that the condition was non-severe.  The academic records note that the language deficits did "not appear to affect" Bedz's academic performance.  (*Id*., PageID.473).

The evidence otherwise supports the conclusion that the condition was not severe.  In January 2018, a consultative examiner observed a speech articulation disorder of "misarticulated" but nonetheless "logical, audible, and goal directed

speech." (ECF No. 11-10, PageID.699). Bedz denied speech treatment following

high school. (*Id*., PageID.697). In September 2017, Dr. Menkes, noted that Bedz

appeared fully oriented with fluent speech. (ECF No. 11-9, PageID.553). March

2018 and October 2018 hospital records note normal speech. (ECF No. 12-4,

PageID.1230; ECF No. 12-5, PageID.1405). Dr. Hampton-Aytch's non-examining

review of the treating and consultative records states that the mental impairments

were non-severe. (ECF 11-5., PageID.290). To the extent that condition could be

attributed to a cognitive disorder, Dr. Hampton-Aytch's findings support the non-

severe finding.

The Commissioner also notes that two of Bedz's three past jobs, sales

attendant, building materials, as stated in the *Dictionary of Occupational Titles*

("DOT") § 299.677-014, 1991 WL 672644 (U.S. Dep't of Labor 1991) and stock

clerk, (DOT § 299.367-014, 1991 WL 672631) required him to " '[s]peak

clearly and distinctly with appropriate pauses and emphasis, correct punctuation,

variations in word order, using present, perfect, and future tenses.' " (ECF No. 22,

PageID.1791) (citing DOT § 299.677-014, 1991 WL 672644; DOT § 299.367-014,

1991 WL 672631).

For overlapping reasons, substantial evidence supports the conclusion that

the condition of "learning impairment," apart from the speech problems, does not

cause significant work-related impairment. Before the alleged onset of disability,

Bedz was able to hold jobs requiring communicative and cognitive skills.  A consultative examiner described him as "intellectually . . . above average" with good cognitive abilities.  (ECF No.11-10, PageID.700).  Although the academic records establish the presence of a learning impairment and the speech condition, "[t]he mere diagnosis . . . says nothing about the severity of the condition."  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Here, the record shows that neither the speech or learning impairment prevented Bedz from holding full-time competitive employment and interacting successfully with others.  Therefore, the ALJ did not err in omitting the conditions from the "severe" impairments at Step Two.

Because Bedz offers no evidence to show that either condition would cause work-related impairment in the jobs cited by the VE forming the Step Five determination, a remand on this basis is not warranted.

### 2.     The Migraine Headaches

The ALJ found that the condition of migraine headaches was non-severe, noting that an MRI of the brain was unremarkable.  (ECF No.11-2, PageID.56; ECF No. 11-10, PageID.709).  Although Bedz faults the ALJ's reliance on the MRI to support the non-severe determination, substantial evidence otherwise supports this finding.  Non-examining source Dr. Mamaril found that the condition of migraine headaches was non-severe.  (ECF No. 11-5, PageID.287-88).  Dr.

Menkes' September 2017 records note that the headaches were "likely" attributable to "caffeine withdrawal." (ECF No. 11-10, PageID.718). The emergency room records state repeatedly that Bedz denied headaches. (ECF No. 11-10, PageID.729; ECF No. 12-3, PageID.1179; ECF No. 12-4, PageID.1228, 1275, 1334-35, 1360; ECF No. 12-5, PageID.1419; ECF No. 12-6, PageID.1530). Notably, Bedz testified that he did not experience migraine headaches following an October 2018 cholecystectomy. (ECF No. 11-4, PageID.230). Despite Bedz's claim to the contrary, none of the medical evidence suggests that the condition caused work-related limitation. Thus, there is no basis to remand. *See Kocher v. Comm'r of Soc. Sec.*, No. 2:14-CV-2263, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015) (citing *Burch v. Barnhart,* 400 F.3d 676, 684 (9th Cir. 2005), *report and recommendation adopted,* No. 2:14-CV-2263, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) ("[W]hen 'there is no evidence in the record, of any functional limitations as a result of obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary")). Likewise here, Bedz has not met his burden to show that migraines caused significant work-related limitations.

In sum, Bedz's denial of headaches to numerous sources, the normal MRI, Dr. Menkes' September 2017 finding that the headaches were attributable to

caffeine withdrawal, and the finding that the condition that the condition was non-severe constitute substantial evidence in support of the ALJ's determination.

### 3.      The Psychological Conditions

The ALJ cited Dr. Hampton-Aytch's non-examining finding that the conditions of depression and anxiety were not severe in support of her own identical finding.  (ECF No. 11-2, PageID.56; ECF No. 11-5, PageID.286-87, 290).  Without more, the non-examining source evidence is sufficient to support the ALJ's findings.  *See  Hoskins v. Comm'r of Soc. Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) ("[S]tate agency medical consultants ... are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.' ") (quoting SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996)).

Substantial evidence found elsewhere in the record also supports the finding that neither depression nor anxiety were severe impairments.  To be sure, Betz testified that he did not receive psychological treatment because he could not find a provider who accepted his insurance.  (ECF No. 11-4, PageID.230).  The medical evidence nonetheless supports the finding that the psychological conditions were

non-severe.  The consultative psychological examiner noted that despite Bedz's claims, he did not appear to have significant symptoms of anxiety.  (ECF No. 11-10, PageID.699).  Bedz did not exhibit depression.  (*Id*., PageID.700).  He reported that during working years he did not have problems getting along with supervisors or coworkers.  (*Id*., PageID.698).  September 2017 emergency records note good judgment and normal behavior.  (ECF No. 12-4, PageID.1317).  In March 2018 Bedz attributed physical symptoms to anxiety but admitted that on that occasion he had not taken anxiety medication prescribed by Dr. Menkes.  (ECF No. 12-4, PageID.1232).

Accordingly, the ALJ's finding that the conditions of depression and anxiety were non-severe impairments should remain undisturbed.

### 4.     The Lumbar Spine Condition

The ALJ found that the condition of back pain was non-severe.  (ECF No. 11-2, PageID.56).  As a threshold matter, Bedz claims that the ALJ failed to address the lumbar spine condition or acknowledge that it was not a severe impairment.  (ECF No. 17, PageID.1759).  However, in regard to the impairments that the ALJ found were not severe, she found as follows:

> [A]ll impairments other than those enumerated above, alleged and found in the record, are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to result in more than minimal work-related restriction for a continuous period of least 12 months, are not expected to result in death, and/or have not been

> properly diagnosed by an acceptable medical source as defined by the
> regulations. . . . He also alleged back pain; migraines; depression and
> anxiety.

(ECF No. 11-2, PageID.56).

The transcript generously supports the exclusion of lumbar back pain among the severe impairments.  Findings for the relevant period note a normal range of motion of the lower extremities and the absence of lower back problems and Bedz's denial of same.  (ECF No. 11-10, PageID.729; ECF No.11-11, PageID.852,855; ECF No. 12-1, PageID.878, 897; ECF No. 12-3, PageID.1179, 1181, 1194, 1206; ECF No. 12-4, PageID.1228, 1275, 1321, 1334, 1337, 1363; ECF No. 12-5, PageID.1371, 1375, 1419; ECF No. 12-6, PageID.1530, 1533, 1628, 1638, 1642).

Aside from the plethora of evidence showing that the lower back condition did not cause significant work-related limitation, the treating and consultative records indicate that Bedz exaggerated his symptoms of physical limitation.  Dr. Menkes noted that Bedz exerted "variable effort" during motor testing and noted an "augmented" antalgia during gait testing.  (ECF No. 11-9, PageID.553).  In January 2018, Dr. Dibai noted that Bedz "did not seem to be motivated to seek employment."  (ECF No. 11-10 PageID.699).  In April 2018 a physical consultative examiner noted that Bedz could sit, stand, and walk without difficulty.  (ECF No. 11-10, PageID.741-742).

Because the ALJ's finding that the lower back condition was not a severe impairment is well supported, this finding should remain undisturbed.

In reply, Bedz argues that the ALJ failed to state whether the lower back condition was severe, non-severe, or did not qualify as a medically determinable impairment.  (ECF No. 23, PageID.1812).  First, as discussed above, the ALJ clearly declined to find the condition severe.  (ECF No. 11-2, PageID.56).  Second, while the ALJ did not state that she found the condition merely non-severe or non-existent, the failure to make that distinction does not constitute reversible error given that the lack of evidence supporting the presence of a lower back condition, much less that it would create significant work-related limitation.  While Bedz received a diagnosis of sciatica based on the self-reported symptoms, (ECF No. 12-3, PageID.1169), he does not cite any imaging studies supporting the diagnosis of a lumbar spine condition.  Finally, even assuming that Bedz could point to some objective evidence of lumbar spine impairment, the RFC limiting him to occasional bending, crouching, and kneeling adequately accounts for the professed limitations.

### B.    The RFC

 The RFC, set forth above, is restated here:

[H]e is limited to occasional climbing of stairs, crouching, crawling, kneeling, stooping/bending; avoid workplace hazards such as

dangerous, moving machinery and unprotected heights so claimant is
not able to climb ladders, ropes or scaffolding; no overhead reaching
with bilateral upper extremities; and, due to pain, he is limited to self-
paced work, not work in a [production-based] environment.

(ECF No. 11-2, PageID.56).

In determining a claimant's RFC, it is necessary to consider (1)

objective medical evidence as well as (2) subjective evidence of pain or

disability. 20 C.F.R. § 404.1545(a)(1) (RFC must be based on all "relevant

evidence").  The "RFC is to be an 'assessment of [a claimant's] remaining

capacity for work' once her limitations have been taken into

account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.

2002).  In crafting the RFC, the ALJ must consider the restrictions alleged

by the claimant.  § 404.1545(b-d); SSR 96-8p, 1996 WL 374184, at *6 (July

2, 1996).  "Although a function-by-function analysis is desirable, SSR 96–8p

does not require ALJs to produce such a detailed statement in

writing." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547–548, 2002

WL 343402, at *5 (6th Cir. 2002) (internal citations omitted).  "[T]he ALJ

need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-

related activities, and explain the resolution of any inconsistencies in the

record." *Id.*

Bedz's contention that the hypothetical question to the VE and identical RFC did not contain all of his relevant limitations in large part rehashes the Step Two arguments addressed and rejected above.  Bedz's argument that the RFC does not address his limitations due to migraine headaches, anxiety, depression, or the speech impediment is defeated by the fact that the substantial evidence supports the conclusion that none of those conditions caused significant work-related limitation.  (ECF No. 17, PageID.1763, 1765-69).  Despite the ALJ's finding that the migraines and psychological conditions were not severe impairments, the limitation to "self-paced work" and no work "in a [production-based] environment" reflects Bedz's allegations of limitations in concentration and stamina.  (ECF No. 11-2, PageID.56).  Substantial evidence supports the exclusion of additional limitations in the RFC.  It is well settled that an ALJ is under no obligation to include unsubstantiated allegations in either the hypothetical question to the VE or in the RFC.  *Stanley v. Sec'y of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994).

Likewise, while Bedz disputes the finding that he was capable of range of exertionally light work, the ALJ's finding is supported by Dr. Marnaril's  April 2018 non-examining finding that Bedz could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk around six hours in an

eight-hour workday with the postural limitations of occasional stooping, kneeling, crouching, or crawling and a preclusion on the use of ladders, ropes, or scaffolds. (ECF 11-5, PageID.292). Notably, while Dr. Marnaril found that Bedz could climb stairs and ramps frequently, the ALJ limited the same activity to occasionally. (*Id.*; ECF No. 11-2, PageID.56). In contrast to Dr. Marnaril's findings that Bedz could occasionally overhead reach, the ALJ precluded all overhead reaching with the bilateral upper extremities in recognition of the limitations caused by the 2018 bilateral shoulder arthroplasty. (ECF No. 11-2, PageID.56; ECF No. 11-5, PageID.293). While Bedz states that the condition of cervical myopathy was not adequately acknowledged in the RFC (ECF No. 17, PageID.1786), the ALJ cited the October 2017 imaging studies showing that the neck condition had not worsened since the February 2015 cervical fusion surgery. (ECF No. 11-2, PageID.58).

Finally, the ALJ's failure to explicitly recount Bedz's claims that he experienced the medication side effect of tiredness as a result of Cymbalta or that he experienced the medication side effect of "a really bad stomachache" (ECF No. 11-4, PageID.232) does not provide grounds for remand. (ECF No. 17, PageID.1767-1768). The ALJ acknowledged Bedz's claim that he became "tired easily." (ECF No. 11-2, PageID.57). Notably, this is wholly

consistent with Bedz's report of medication side effects, which was limited

to his statement that Cymbalta made him "tired." (ECF No. 11-8,

PageID.407).

Further, while Bedz cites 20 C.F.R. § 404.1529(c)(3)(iv), which

states that the ALJ must consider the allegations of medication side effects,

it is not required that s/he discuss them in the administrative findings. *See*

*French v. Comm'r of Soc. Sec.*, No. 15-12687, 2016 WL 3951419, at *13

(E.D. Mich. June 30, 2016) (Morris, M.J.) (ALJ "obligated to consider the

side effects of French's medication" but "not obliged to specifically mention

that finding in the decision.") (internal citation omitted), *report and*

*recommendation adopted,* 2016 WL 3924111 (E.D. Mich. July 21, 2016).

As such, the ALJ's failure to mention the allegations of a stomachache in the

administrative opinion did not constitute error.

Moreover, Bedz does not cite any treating records showing that he

reported medication side effects.  Thus, the ALJ was free to disregard

Bedz's assertions to the contrary.  *See Bentley v. Comm'r of Soc. Sec.*, 23 F.

App'x 434, 435 (6th Cir. 2001) (ALJ not required to credit allegations of

medication side effects unsupported by the treating records.); *Howard v.*

*Berryhill*, No. CV 16-13851, 2017 WL 5493655, at *3 (E.D. Mich. Oct. 24,

2017) (Stafford, M.J.) ("Despite Howard's testimony, there is no evidence in

the record that she reported such side effects to her doctors or sought a

change in medication as a result. . . . Allegations of side effects must be

supported by objective medical evidence.") (internal citations

omitted), *report and recommendation adopted sub nom. Howard v. Comm'r*

*of Soc. Sec. Admin.*, No. 16-CV-13851, 2017 WL 6422067 (E.D. Mich. Dec.

18, 2017).

### C.    In Sum

 While Bedz suffers from some impairments, the ALJ accounted for those

impairments in determining that Bedz is capable of working within the confines of

his impairments.  Because the non-disability determination was adequately

explained and well within the "zone of choice" accorded to the fact-finder at the

administrative hearing level, it should not be disturbed by this Court.  *Blakley,*

*supra,* 581 F.3d at 406.

### VI.    Conclusion

 For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion (ECF No. 23) be GRANTED, that Bedz's motion (ECF

No. 17) be DENIED, and the Commissioner's decision be AFFIRMED.


Dated:  February 15, 2022                                    s/Kimberly G. Altman
Detroit, Michigan                                               KIMBERLY G. ALTMAN
                                                                        United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without merit,

it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on February 15, 2022.


s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager